IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


LOIS JEAN CONNER,                 :      CONSOLIDATED UNDER
                                  :      MDL-875
          Plaintiff,              :
                                  :      Transferred from the Central
     v.                           :      District of California
                                  :      (Case No. 09-02317)
ALFA LAVAL, INC., et al.,         :
                                  :      E.D. PA CIVIL ACTION NO.
          Defendants.             :      2:09-CV-67099-ER



JAMES H. PRANGE, et al.,          :      CONSOLIDATED UNDER
                                  :      MDL-875
          Plaintiffs,             :
                                  :      Transferred from the Central
     v.                           :      District of California
                                  :      (Case No. 09-06698)
ALFA LAVAL, INC., et al.,         :
                                  :      E.D. PA CIVIL ACTION NO.
          Defendants.             :      2:09-CV-91848-ER



JAMES W. STONE, et al.,           :      CONSOLIDATED UNDER
                                  :      MDL-875
          Plaintiffs,             :
                                  :      Transferred from the Northern
     v.                           :      District of California
                                  :      (Case No. 09-02327)
ALFA LAVAL, INC., et al.,         :
                                  :      E.D. PA CIVIL ACTION NO.
          Defendants.             :      2:09-CV-93726-ER

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          FEBRUARY 1, 2012


TABLE OF CONTENTS

I.   BACKGROUND ................................................. 5
II.  LEGAL STANDARD ............................................ 8
III. DISCUSSION ................................................ 9
     A.   Products-Liability Theories Under Maritime Law....... 9
     B.   Defendants' Liability Under Maritime Law........... 11
     C.   Plaintiffs' Arguments.............................. 22
     D.   Application........................................ 25
IV.  CONCLUSION ............................................... 26

Before the Court are Defendants' motions for summary

judgment[1] in the above-captioned cases, all of which are

part of MDL-875, the consolidated asbestos products liability

multidistrict litigation pending in the U.S. District Court for

the Eastern District of Pennsylvania. Defendants move for

summary judgment on the ground that they are not liable for

injuries caused by asbestos products, such as insulation,

gaskets, and packing, that were incorporated into their products

_____

[1]      The following Defendants have moved for summary
judgment in the above-captioned cases: General Electric Company
(Conner v. Alfa Laval, Inc., No. 09-67099); Armstrong
International, Inc., Foster Wheeler Energy Corporation, Warren
Pumps, L.L.C., Crane Company, and CBS Corporation (Stone v. Alfa
Laval, Inc., No. 09-93726); IMO Industries, Inc., General
Electric Company, Buffalo Pumps, Inc., Foster Wheeler, L.L.C.,
Warren Pumps, L.L.C., and Crane Company (Prange v. Alfa Laval,
Inc., No. 09-91848).

or used as replacement parts, but which they did not manufacture
or distribute.[2]

Having determined that the instant cases are governed
by maritime law,[3] see Conner v. Alfa Laval, Inc., No. 09-67099,

---

[2]     Indeed, as asbestos litigation has evolved, and the
major manufacturing defendants have declared bankruptcy, the
litigation has moved away from the manufacturers of asbestos,
and defendants in the cases now pending before this Court are
typically those that manufactured so-called "bare-metal"
products that contained or were later encapsulated in asbestos.

        Although litigants often refer to the defense raised
herein as the "bare-metal defense," it is more properly
understood, as explained below, as a challenge to a plaintiff's
prima facie case to prove duty or causation.

[3]     The Court has now considered and ruled upon the six
issues most frequently litigated under maritime law. First, in
Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455 (E.D. Pa. 2011)
(Robreno, J.), the Court addressed the maritime jurisdiction
test for determining whether maritime law or state law applies
to a given claim. Second, in Hagen v. Benjamin Foster Co., 739
F. Supp. 2d 770 (E.D. Pa. 2010) (Robreno, J.), the Court
addressed the standard for removal of a case from state court to
federal court on grounds of the government contractor defense
set forth in Boyle v. United Technologies Corp., 487 U.S. 500,
512 (1988). Third, with its decisions in Faddish v. General
Electric Co., No. 09-70626, 2010 WL 4146108 (E.D. Pa. Oct. 20,
2010) (Robreno, J.) (granting summary judgment) and Willis v. BW
IP International Inc., No. 09-91449, 2011 WL 3818515 (E.D. Pa.
Aug. 26, 2011) (Robreno, J.) (denying summary judgment), the
Court addressed the proofs necessary for obtaining or surviving
summary judgment on the basis of the government contractor
defense. Fourth, the Court has clarified the standard for
product identification evidence necessary to establish causation
under maritime law. See, e.g., Prange v. Alfa Laval, Inc., No.
09-91848, 2011 WL 4912828 (E.D. Pa. July 22, 2011) (Robreno,
J.). Fifth, the Court clarified that the sophisticated user
defense has not been recognized under maritime law and that
summary judgment will not be granted in this MDL litigation on
that basis. Id. Sixth, with the decision set forth herein, the

2011 WL 3101810 (E.D. Pa. July 22, 2011) (Robreno, J.), the

Court now considers whether, under maritime law, Defendants are

liable for injuries caused by asbestos products manufactured by

others but used with Defendants' products.[4]

---

Court now considers the availability and scope of the so-called
"bare-metal" defense under maritime law.

    In addition, with the decision concurrently released
in Donn v. A.W. Chesterton, Co., No. 10-62071 (E.D. Pa. Feb. 1,
2012) (Robreno, J.), the Court has ruled upon the threshold
issues of its jurisdiction over, and the justiciability of,
claims against government contractors arising as a result of
exposure to asbestos supplied to the military pursuant to a
government procurement contract. In doing so, the Court has
declined to extend the protection of the government contractor
defense set forth in Boyle beyond its current parameters.

[4]    In cases where related claims are consolidated for
pre-trial purposes in a single transferee court, see 28 U.S.C. §
1407(a), the transferee court applies the substantive state law
that the transferor court would have applied had there been no
venue change. See, e.g., De George v. Am. Airlines, Inc., 338 F.
App'x 15, 16 (2d Cir. 2009) (citing Van Dusen v. Barrack, 376
U.S. 612, 639 (1964)), cert. denied, 130 S. Ct. 1068 (2010).
When state law is unsettled and the Court is unable to predict
its resolution with reasonable certainty, the Court typically
remands to the transferor court for a ruling under the
particular state's law. See, e.g., Faddish v. CBS Corp., No. 09-
70626, 2010 WL 4159238, at *5 (E.D. Pa. Oct. 22, 2010) (Robreno,
J.). But where, as here, a defense arises under federal law and
the U.S. Supreme Court has not ruled on the issue, the
transferee court typically applies the law of the circuit in
which it sits, that is, Third Circuit law. See, e.g., Oil Field
Cases, 673 F. Supp. 2d 358, 362-63 (E.D. Pa. 2009) (Robreno,
J.). The law of a transferor forum "merits close consideration,
but does not have stare decisis effect" on the transferee court.
In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171,
1176 (D.C. Cir. 1987), aff'd sub nom. Chan v. Korean Air Lines,
Ltd., 490 U.S. 122 (1989); see also Federal Judicial Center,
Manual for Complex Litigation § 20.132, at 222 (4th ed. 2004)
("Where the claim or defense arises under federal law, however,
the transferee judge should consider whether to apply the law of

I.    **BACKGROUND**

Plaintiffs allege that Robert Conner, James Prange, and James Stone ("Decedents") developed mesothelioma as a result of exposure to Defendants' asbestos-containing products while working on vessels operated by the U.S. Navy. Specifically, Mr. Conner alleges he was exposed to asbestos products used with General Electric Company's ("GE's") turbines while he served in the U.S. Navy from 1962 to 1971 aboard the U.S.S. Yorktown. GE manufactured marine turbines that required exterior insulation, which likely would have contained asbestos, and that required asbestos-containing gaskets to seal the turbines to adjoining equipment and piping. In some instances, GE originally supplied gaskets to the Navy along with its turbines.

Mr. Prange alleges he was exposed to asbestos used with products manufactured by IMO Industries ("IMO"), GE, Buffalo Pumps, Inc. ("Buffalo"), Foster Wheeler, L.L.C. ("Foster Wheeler"), Warren Pumps, L.L.C., ("Warren"), and Crane Co. ("Crane"), while serving in the U.S. Navy from 1965 to 1969

_____

the transferee circuit or that of the transferor court's circuit . . . .").

In at least one instance, this Court has considered and ruled on whether a manufacturer is liable under maritime law for asbestos products it did not manufacture or distribute. See, e.g., Delatte v. A.W. Chesterton Co., No. 09-69578 (E.D. Pa. Feb. 28, 2011) (Robreno, J.) (order granting summary judgment on failure-to-warn claim), ECF No. 241. In any event, the Court writes today to clarify the issue under maritime law and to guide future litigants before this Court.

aboard the U.S.S. Pollux and U.S.S. Delta. Defendants manufactured turbines, pumps, boilers, and valves that used and, in some cases, were originally distributed with, asbestos-containing insulation, packing, gaskets, and other products.

Mr. Stone alleges he was exposed to asbestos used with products manufactured by Crane, Westinghouse, Warren Pumps, and Armstrong International while serving as a boiler tender in the U.S. Navy from 1959 to 1976 aboard various naval vessels. Defendants manufactured valves, blowers, condensers, and steam traps that used and, in some cases, were designed to be used with, asbestos-containing insulation, gaskets, packing, and other products.

Plaintiffs have not, however, proffered evidence that Defendants manufactured or distributed the particular asbestos components and replacement parts to which Decedents were exposed. Instead, they argue that Defendants are liable for the intended and foreseeable use of asbestos parts in their original products.[5]

---

[5]     Indeed, courts that have considered this issue have recognized a distinction between the original asbestos component parts and replacement parts. That is, some manufacturers originally distributed their products together with asbestos components, such as gaskets. However, over time, those original components were replaced with asbestos parts not manufactured by the original distributor. See, e.g., O'Neil v. Crane Co., No. S177401, 2012 WL 88533, at *6 (Cal. Jan. 12, 2012).

Defendants moved for summary judgment on numerous grounds, including lack of product identification and the government contractor defense. They now assert that they are not liable for injuries caused by asbestos products they did not manufacture. As is typical in MDL 875 cases, the Court first analyzed whether there was sufficient evidence of product identification with respect to a finished product, such that Plaintiffs could overcome summary judgment. The Court denied summary judgment on product identification grounds because Plaintiffs raised a genuine issue of material fact as to whether exposure to the asbestos-containing products at issue was a "substantial contributing factor" to Decedents' injuries. See, e.g., Prange v. Alfa Laval, Inc., No. 09-91848 (E.D. Pa. July 22, 2011) (order denying summary judgment), ECF No. 269. Likewise, in Conner and Stone, Magistrate Judges Strawbridge and Rueter, respectively, recommended denial of Defendants' motions for summary judgment on product identification grounds, and their recommendations were adopted.

Having denied summary judgment on product identification grounds, the Court now turns to Defendants' argument that, notwithstanding evidence of exposure to the finished product, they are not liable for the injury-causing asbestos insulation and replacement parts at issue.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The Court will view the facts in the light most favorable to the nonmoving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

## III. DISCUSSION

Defendants move for summary judgment on the ground that, as a matter of law, they cannot be held liable for injuries caused by asbestos components, such as insulation, gaskets, and packing, that were incorporated into their products or used as replacement parts, but which they did not manufacture or distribute.[6]

### A.   Products-Liability Theories Under Maritime Law

Products-liability theories, including strict products liability, are well within maritime law. See, e.g., E. River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 865 (1986); Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp., 726 F.2d 121, 123 (3d Cir. 1984). Absent a controlling statute, maritime law is "developed by the judiciary" and is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." E. River Steamship, 476 U.S. at 864-65. Therefore, the Court will examine the development of products-liability law, under both admiralty and state common law, as it concerns the issue before the Court.

---

[6]     Although the parties' original filings substantially relied on California law, the Court, having subsequently ruled that the case would be decided under maritime law, directed the parties to file supplemental memoranda of law that address this defense under maritime law. See Order, Oct. 25, 2011, ECF No. 230.

A manufacturer is liable for harm caused by a product sold "in a defective condition unreasonably dangerous." See Restatement (Second) of Torts § 402A (1965). Liability for defective products has grown into three distinct theories of liability: manufacturing defects, design defects, and defects based on inadequate warnings. See Restatement (Third) of Torts: Prods. Liab. § 2 (1998) ("A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings.").[7] And a manufacturer is

---

[7] For purposes of product-liability theory, a product:

(a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;

(b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;

(c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

Restatement (Third) of Torts: Prods. Liab. § 2 (1998).

also liable for the harm resulting from the negligent failure to warn of the risks created by its products. See id.

### B.   Defendants' Liability Under Maritime Law

In determining whether Defendant manufacturers are liable under maritime law for injuries caused by asbestos parts used with their products, whether in strict liability or negligence, a plaintiff must establish causation with respect to each defendant manufacturer. See Lindstrom v. A-C Prod. Liab. Trust, 424 F.3d 488, 492 (6th Cir. 2005).

A plaintiff establishes causation under maritime law by showing (1) that the plaintiff was exposed to the defendant's product and (2) that the product was a substantial factor in causing the plaintiff's injury. See id. ("Plaintiffs in products liability cases under maritime law may proceed under both negligence and strict liability theories. Under either theory, a plaintiff must establish causation."); Nelson v. A.W. Chesterton Co., No. 10-69365, 2011 WL 6016982, at *1 n.1 (E.D. Pa. Oct. 26, 2011) (Robreno, J.); see also Restatement (Second) of Torts § 431, cmt. a (providing that actor's negligent conduct is legal cause of harm, in part, when his conduct is "substantial factor" in bringing about harm). "'Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability.'" Nelson, 2011 WL

6016982, at *1 (quoting Stark v. Armstrong World Indus., Inc., 21 F. App'x 371, 376 (6th Cir. 2001)). In the context of a claim for negligent failure to warn, this principle is considered in terms of a manufacturer's duty to warn about the hazards inherent in its own products. E.g., O'Neil, 2012 WL 88533, at *8.

The Sixth Circuit, the only federal court of appeals to consider this issue, confirmed that a manufacturer is not liable for asbestos-containing components and replacement parts it did not manufacture or distribute. See Lindstrom v. A-C Prod. Liab. Trust, 424 F.3d 488 (6th Cir. 2005); Stark v. Armstrong World Indus., Inc., 21 F. App'x 371 (6th Cir. 2001) (not precedential).

In Stark, the plaintiff, a merchant seaman, brought an action against defendant maritime equipment manufacturers seeking relief from injuries allegedly stemming from exposure to the defendants' asbestos-containing products. The plaintiff alleged that he inhaled asbestos fibers while working in the boiler and engine rooms. Regarding the claims against the boiler manufacturers, the plaintiff claimed, in part, that he was exposed to asbestos contained in products attached to the boilers. But the court refused to hold the defendant manufacturers liable for asbestos products they neither

manufactured nor distributed and affirmed summary judgment for
defendants. Id. at 381.

     And in Lindstrom, the leading admiralty case, a
merchant seaman, Lindstrom, filed a complaint against various
defendant manufacturers for compensation for mesothelioma, a
condition which he claimed to have developed as a result of
exposure to asbestos components used in the defendants'
products. Lindstrom asserted products liability claims of design
and manufacturing defects.

     The Lindstrom court affirmed the district court's
grant of summary judgment to multiple defendants because a
manufacturer cannot be responsible for a third party's asbestos
products. See Lindstrom, 424 F.3d at 495, 496, 497. Lindstrom
claimed that he was exposed to asbestos while replacing gaskets
on pumps manufactured by Coffin Turbo Pump, Inc. But, as
Lindstrom testified, the replacement gaskets themselves were not
manufactured by Coffin Turbo. The court affirmed summary
judgment and held, "Coffin Turbo cannot be held responsible for
the asbestos contained in another product." Id. at 496.
Furthermore, Lindstrom alleged exposure to asbestos packing that
was attached to water pumps manufactured by Ingersoll Rand
Company. The asbestos packing, however, was not manufactured by
Ingersoll Rand. The court, again, held that Ingersoll Rand could
not be held responsible for asbestos-containing material

attached to Ingersoll Rand's products post-manufacture. Id. at 497.

A number of state courts, and at least one federal court, that have considered this issue have similarly held that a defendant manufacturer is not liable for a third party's asbestos products when the defendant is not part of the "chain of distribution" of the asbestos product.[8] See Surre v. Foster Wheeler, L.L.C., No. 07-9431, 2011 WL 6382545, at *4 (S.D.N.Y. Dec. 20, 2011) (refusing to hold boiler manufacturer liable for failure to warn when manufacturer "did not place into the stream of commerce the asbestos to which [the plaintiff] was exposed"); O'Neil, 2012 WL 88533, at *5-7; Taylor v. Elliott Turbomachinery Co., Inc., 90 Cal. Rptr. 3d 414 (Cal. Ct. App. 2009) (refusing to hold manufacturers liable under California law in part because manufacturers "not a part of the manufacturing or marketing enterprise of the allegedly defective products that caused the injury in question" (internal quotation and editorial marks removed)); Braaten v. Saberhagen Holdings, 198 P.3d 493,

---

[8]     This principle is sometimes stated in terms of the "stream of commerce." See, e.g., Taylor v. Elliott Turbomachinery Co., Inc., 90 Cal. Rptr. 3d 414, 422 (Cal. Ct. App. 2009).

495 (Wash. 2008) (en banc); <u>Simonetta v. Viad Corp.</u>, 197 P.3d 127, 137-38 (Wash. 2008) (en banc).[9]

The Washington state cases are instructive here. In <u>Simonetta</u>, a former Navy mechanist brought negligence and strict liability claims against Viad Corporation, the successor corporation to the manufacturer of an evaporator used to desalinize water on a ship. The evaporator required use of asbestos-containing parts to function. The asbestos to which the mechanist was exposed, however, was not manufactured, provided,

---

[9]     <u>See also</u> Restatement (Second) of Torts § 402A cmt. f (1965) (noting that section 402A applies to "any person engaged in the business of selling" product causing harm); Restatement (Third) of Torts: Prods. Liab. § 1 (1998) ("One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect."); Am. Law of Prods. Liab. 3d § 16:37 (2002) (requiring in strict-liability case that plaintiff prove "defendant manufactured the product, sold the product to the plaintiff, or in some other specified manner placed the product in the stream of commerce").

The New York Appellate Division, in a one-paragraph opinion, upheld denial of summary judgment for a defendant manufacturer of pumps used on Navy ships when an issue of fact existed as to whether the defendant sometimes used asbestos gaskets and packing with its products. <u>Berkowitz v. A.C. & S., Inc.</u>, 733 N.Y.S.2d 410, 411 (N.Y. App. Div. 2001). The court went on to state, "Nor does it necessarily appear that [the defendant] had no duty to warn concerning the dangers of asbestos that it neither manufactured nor installed on its pumps." <u>Id.</u> The Court finds this opinion, without any explanation as to the New York court's reasoning, unconvincing, especially in light of the authorities relied on herein. <u>See also</u> <u>Surre</u>, 2011 WL 6382545, at *4 ("[<u>Berkowitz</u>] hardly stands for the broad proposition that a manufacturer has a duty to warn whenever it is foreseeable that its product will be used in conjunction with a defective one.").

or installed by Viad. The court viewed the asbestos-containing
components, not the evaporators, to be the harm-causing product.
Id. at 138 (describing Viad's product as "the evaporator as
delivered by Viad to the [N]avy, sans asbestos insulation"). And
upon review of the Washington case law, the court concluded that
"our precedent does not support extending strict liability for
failure to warn to those outside the chain of distribution of a
product." Id. at 137. Ultimately, the court refused to hold Viad
liable for failure to warn because it was not within the chain
of distribution of the dangerous products (the asbestos
components alone). Id. at 138.

     In a companion case to Simonetta, the Washington
Supreme Court took the Simonetta holding one step further.
Braaten v. Saberhagen Holdings, 198 P.3d 493 (Wash. 2008).
There, the court considered "whether under common law products
liability . . . the manufacturers were required to warn of the
danger of exposure to asbestos in packing and gaskets in their
products if they originally included in their products asbestos-
containing packing or gaskets manufactured by others." Id. at
501. Braaten, a pipefitter aboard Navy ships, sued defendant
manufacturers after he was diagnosed with mesothelioma. The
manufacturers provided pumps and valves to the Navy to be used
aboard the ships, but the Navy insulated the products with
asbestos-containing insulation. None of the manufacturers

16

manufactured asbestos insulation. In some cases, however, the original products contained asbestos components when delivered to the Navy. Braaten claimed exposure to respirable asbestos when he removed and replaced the asbestos insulation and sued defendant manufacturers for failure to warn under strict liability and negligence theories. But Braaten never installed, worked on, or was exposed to asbestos from any new pumps.

The court began its analysis with the general principle stated in Simonetta that, under Washington common law, which adopted section 402A of the Restatement (Second), "a manufacturer does not have an obligation to warn of the dangers of another manufacturer's product."[10] Id. Braaten failed to show that he was exposed to asbestos products manufactured by the defendants, and the court, therefore, reinstated summary judgment for the defendants. Id. at 504.

And in a unanimous opinion, the Supreme Court of California recently held that, under California law, a product manufacturer generally is not liable in strict liability or negligence for harm caused by a third party's products. O'Neil, 2012 WL 88533, at *1. There, O'Neil, who formerly served on an aircraft carrier, brought products liability claims against

---

[10]     As explained below, the Braaten court justified this rule of law by consulting the policy underlying products-liability theory.

Crane Company and Warren Pumps, L.L.C., which manufactured equipment used in the ship's steam propulsion system. Pursuant to Navy specifications, asbestos insulation, gaskets, and other parts were used with the defendant manufacturer's equipment, some of which was originally supplied by the defendants. O'Neil, however, worked aboard the ship twenty years after the defendants supplied the equipment and original parts. There was no evidence that the defendants made any of the replacement parts to which O'Neil was exposed or, for that matter, that the defendants manufactured or distributed asbestos products to which O'Neil was exposed.

The court firmly held that the defendant manufacturers were not liable for harm caused by asbestos products they did not manufacture or distribute. O'Neil, 2012 WL 88533, at *5. With regard to the plaintiff's design-defect claim, the court noted that "strict products liability in California has always been premised on harm caused by deficiencies in the defendant's own product." Id. Further, the "defective product . . . was the asbestos insulation, not the pumps and valves to which it was applied after defendants' manufacture and delivery." Id. at *7.

Similarly, the Court rejected the plaintiff's claim that the defendants are strictly liable for failure to warn of the hazards of the release of asbestos dust surrounding their products. The plaintiff asserted that the defendants were under

18

a duty to warn because it was reasonably foreseeable that their products would be used with asbestos insulation. Nevertheless, the court held, "California law does not impose a duty to warn about dangers arising entirely from another manufacturer's product, even if it is foreseeable that the products will be used together." Id. at *16. Accordingly, the Court refused to hold the defendants strictly liable. Id. at *17.

And the O'Neil court conducted a similar analysis of the plaintiff's claim based on the defendants' negligent failure to warn. The court concluded that "expansion of the duty of care as urged here would impose an obligation to compensate on those whose products caused the plaintiffs no harm. To do so would exceed the boundaries established over decades of product liability law." Id. at *19. Thus, as a matter of law, the court refused to hold the defendants liable on the plaintiff's strict liability and negligence claims.

Finally, the policy motivating products-liability law confirms that manufacturers in the chain of distribution can be liable only for harm caused by their own products. Indeed, products-liability theories rely on the principle that a party in the chain of distribution of a harm-causing product should be liable because that party is in the best position to absorb the costs of liability into the cost of production:

19

On whatever theory, the justification for the strict
liability has been said to be that the seller, by
marketing his product for use and consumption, has
undertaken and assumed a special responsibility toward
any member of the consuming public who may be injured
by it; that the public has the right to and does
expect, in the case of products which it needs and for
which it is forced to rely upon the seller, that
reputable sellers will stand behind their goods; <u>that
public policy demands that the burden of accidental
injuries caused by products intended for consumption
be placed upon those who market them, and be treated
as a cost of production against which liability
insurance can be obtained</u>; and that the consumer of
such products is entitled to the maximum of protection
at the hands of someone, and the proper persons to
afford it are those who market the products.

Restatement (Second) of Torts § 402A, cmt. c (1965) (emphasis

added).

And various courts that have considered the issue have

similarly noted that this policy weighs against holding

manufacturers liable for harm caused by asbestos products they

did not manufacture or distribute because those manufacturers

cannot account for the costs of liability created by the third

parties' products. <u>See</u> <u>O'Neil</u>, 2012 WL 88533, at *17 ("It is

also unfair to require manufacturers of nondefective products to

shoulder a burden of liability when they derived no economic

benefit from the sale of the products that injured the

plaintiff."); <u>Taylor</u>, 90 Cal. Rptr. 3d at 424-25 (refusing to

hold manufacturer liable when manufacturer "not part of the

manufacturing or marketing enterprise of the allegedly defective

products that caused the injury in question" (internal quotation

marks removed)); Simonetta, 197 P.3d at 138 & n.8 (refusing to
extend liability to manufacturers outside of chain of
distribution when manufacturers lacked control over type of
insulation Navy would choose and defendant derived no revenue
from asbestos-containing products); Braaten, 198 P.3d at 498
(refusing to hold manufacturer liable because "[t]he law
generally does not require a manufacturer to study and analyze
the products of others and warn users of the risks of those
products" (internal quotation marks removed)); see also Baughman
v. Gen. Motors Corp., 780 F.2d 1131, 1133 (4th Cir. 1986)
(refusing to hold automobile manufacturer liable for defective
tire it did not manufacture when manufacturer did not have
opportunity to inspect tire, did not benefit from sale of tire,
and did not represent to public that tire was its own); Rastelli
v. Goodyear Tire & Rubber Co., 591 N.E.2d 222, 225-26 (N.Y.
1992) (refusing to hold tire manufacturer liable for defective
multipiece rim it did not manufacture when manufacturer had no
control over production of multipiece rim, had no role in
placing rim in chain of distribution, and derived no benefit
from its sale).

        Therefore, this Court adopts Lindstrom and now holds
that, under maritime law, a manufacturer is not liable for harm
caused by, and owes no duty to warn of the hazards inherent in,
asbestos products that the manufacturer did not manufacture or

distribute. This principle is consistent with the development of products-liability law based on strict liability and negligence, relevant state case law, the leading federal decisions, and important policy considerations regarding the issue. A plaintiff's burden to prove a defendant's product caused harm remains the same in cases involving third-party asbestos manufacturers as it would in other products-liability cases based on strict liability and negligence.

C.   Plaintiffs' Arguments

Plaintiffs raise two arguments to hold manufacturers liable for harm caused by asbestos products they did not manufacture or distribute. First, Plaintiffs argue that under the integrated-products doctrine the "products" at issue are Defendants' products together with the asbestos-containing components and replacement parts supplied by third parties. But their argument is not consistent with the law under this doctrine. Indeed, the cases on which Plaintiffs rely, East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 865 (1986), and Sea-Land Service, Inc. v. General Electric Co., 134 F.3d 149 (3d Cir. 1998), do not support holding Defendants liable here. The analysis in those cases concerned whether harm was caused to a specific product itself or "other property" for purposes of determining whether plaintiffs suffered purely

economic loss. Here, however, there is no suggestion that the asbestos-containing parts caused harm to Defendants' products themselves. Plaintiffs fail to show how these cases require the Court to find that Defendants participated in the chain of distribution of third parties' asbestos-containing components and replacement parts.

Indeed, even if the Court were to accept that Defendants are component-part manufacturers, a component-part manufacturer is "not liable for injuries caused by the finished product into which the component is incorporated unless the component itself was defective at the time it left the manufacturer." Koonce v. Quaker Safety Prods. & Mfg., 798 F.2d 700, 715 (5th Cir. 1986) (Texas law); Taylor, 90 Cal. Rptr. 3d at 429 (California law); see also MacPherson v. Buick Motor Co., 111 N.E. 1050, 1055 (N.Y. 1916) (Cardozo, J.) (finding automobile manufacturer liable for injuries caused by third party's defective part that manufacturer incorporated into finished automobile before sale); Restatement (Third) of Torts: Prods. Liab. § 5 (1998) (providing that component-part manufacturer is liable if component is defective or integration of component into design of product creates harm-causing defect). Here, there is no suggestion that Defendants' products were defective before their distribution or that Plaintiffs were

exposed to the original asbestos parts manufactured or distributed by Defendants.

Second, Plaintiffs argue that Defendants have a duty to warn of the hazards posed by the foreseeable uses of their products. The Court has held that, as a matter of law, Defendants do not owe a duty to warn under maritime law of the hazards posed by products they did not manufacture or distribute. See supra Part III.B.

Plaintiffs cite to Noel v. United Aircraft Corp., 342 F.2d 232 (3d Cir. 1964). In Noel, the Third Circuit held that, under maritime law, a defendant airplane manufacturer had a duty to warn an airline company of known dangers inherent in its product after a design defect in the propeller system caused one of its airplanes to crash in international waters. Noel is inapposite because there, the manufacturer's product——the propeller system——caused the harm. Here, Defendants' products did not cause Plaintiffs' harm.

Plaintiffs' reliance on ContiCarriers & Terminals, Inc. v. Borg-Warner Corp., 593 F. Supp. 400 (E.D. Mo. 1984), is similarly misplaced. There, manufacturers of marine bearings breached a duty to warn customers about the dangers of using dry ice to shrink the bearings for installation, which was industry practice. The failure to warn proximately caused the damage to

the bearings. Plaintiffs here allege that asbestos-containing components caused harm to Plaintiffs, not Defendants' products.[11]

With these principles in mind, the Court will now consider whether Plaintiffs carried their burden of proof with respect to each manufacturer.

D.   Application

Having held as a matter of law that a manufacturer is not liable for harm caused by the asbestos products that it did not manufacture or distribute, Plaintiffs fail to raise a genuine issue of material fact as to whether any of the Defendants manufactured or distributed the asbestos products that caused Decedents' injuries. Plaintiffs acknowledge that Defendants knew Navy sailors would be exposed to asbestos while repairing and maintaining Defendants' products; that the products "required" asbestos insulation, gaskets, and packing; that Defendants sometimes shipped their products with asbestos components "already in place"; that Defendants supplied asbestos-containing replacement parts; and that their products required maintenance that would expose the sailors to asbestos-

---

[11]      Plaintiffs' argument that Defendants are under a "continuing duty" to warn that arises when a manufacturer sells a product it later learns is defective when sold misses the issue. Plaintiffs have not shown that Defendants' products caused Decedents' harm, much less that Defendants owed them a continuing duty after their products were distributed.

containing products. Pls.' Supp. Br. on Bare-Metal Defense Under
Maritime Law 2-3, No. 09-67099, ECF No. 233. But, as is apparent
from Plaintiffs' summary of the evidence of record, Plaintiffs
have not pointed to evidence of record to create a genuine issue
of material fact as to whether Defendants manufactured or
distributed the asbestos products to which Decedents were
allegedly exposed. Therefore, Defendants are entitled to summary
judgment on Plaintiffs' products-liability claims based on
strict liability and negligence.

**IV.   CONCLUSION**

       For the reasons provided above, the Court will grant
Defendants' motions for summary judgment. An appropriate order
will follow.